# East Stroudsburg State Normal School, Appellant, v. Yetter.

*Corporations—School laws—State aid—Officers—Sale of supplies—Act of April 23, 1903, P. L. 285—Constitutional law.*

A private corporation operating a state normal school and receiving moneys from legislative appropriations, is within the purview of the Act of April 23, 1903, P. L. 285, entitled; " An Act to prevent officers or members of boards of managers of institutions receiving appropriations of state money from selling supplies to such institutions, or acting as agent for the sale of the same."

The Act of April 23, 1903, P. L. 285, is constitutional.

Argued Feb. 25, 1907.   Appeal, No. 49, Jan. T., 1907, by plaintiff, from judgment of C. P. Monroe Co., Sept. T., 1906, No. 6, on case stated in suit of East Stroudsburg State Normal School v. Milton Yetter.   Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Case stated in an action of assumpsit for breach of contract.

TREXLER, P. J., specially presiding, filed the following opinion:

The matter comes before the court upon a case stated.   On March 5, 1906, Milton Yetter, a member of the board of trustees of the East Stroudsburg state normal school, a private corporation chartered by the state, agreed to furnish certain merchandise to said normal school at a fixed price.   He failed to deliver it and the plaintiff went into the open market and bought the same, and the difference between the contract price and the market price was $100, to recover which this suit is brought.

By the Act of April 23, 1903, P. L. 285, entitled " An act to prevent officers or members of boards of managers of institutions receiving appropriations of state money from selling supplies to such institutions, or acting as agent for the sale of the same," it is provided :

" Section 1. Be it enacted, etc., that it shall not hereafter be lawful for any officer or member of the board of managers

of an institution, at a time when said institution is receiving state moneys from legislative appropriations, to furnish supplies to such institution, either by direct sale or sale through an agent or firm, or to act as an agent for another in so furnishing supplies.

" Any person who may violate any of the provisions of this act shall be guilty of a misdemeanor, and upon conviction therefor shall be punished by a fine not exceeding five hundred (500) dollars, or by imprisonment not exceeding one year, or both fine and imprisonment, at the discretion of the court."

The question before the court is, is the act above quoted a valid and constitutional enactment ? If it is, then judgment should be entered for the defendant, and if not, for the plaintiff.

### DISCUSSION.

The first objection to the act is, that it is in contravention of article I, sec. 17, of the constitution of Pennsylvania, and of article I, section 10, clause 1, of the constitution of the United States, forbidding the passage of any law impairing the obligation of contracts.

The East Stroudsburg state normal school is a private corporation, chartered by the state of Pennsylvania. See Commonwealth v. Yetter, 190 Pa. 488.

It is contended that this law impairs the obligation of the contract between the commonwealth and the school in granting the charter and accepting it as a state normal school. I think that this proposition requires no extended discussion. It can hardly be claimed that the chartered rights of the state normal school are impaired or abridged by any such prohibition as is imposed by the act now before us.

The charter of the corporation is not a license to do business in such ways and by such methods as it sees fit, when such ways may be contrary to public policy. The legislature has in many cases, where the public health or safety is concerned, regulated corporations. Irrespective of this, the normal school can still pursue the objects of its charter and the fact that it cannot purchase supplies from any of its officers cannot be held to deprive it of any of its functions.

The second reason urged is, that it is in contravention of

article III, sec. 7, of the constitution of the state of Pennsylvania, prohibiting the passage of any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts and of the fourteenth amendment, sec. 1, of the constitution of the United States, providing that no state shall make any law abridging the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law.

The act in question can hardly be considered as an act regulating affairs of counties, townships, cities, wards, boroughs or school districts, as the act applies only to institutions receiving state aid.

It is true that in Morrison v. Bachert, 112 Pa. 322, it was said that the words " Affairs of the county " mean such affairs as affect the affairs of the people of a county, but by no consideration of this case can we say that the prohibiting of certain contracts between institutions and their officers is legislation concerning the affairs of the subjects referred to in said article of the constitution, nor can it be held that this act deprives any person of liberty or property or the protection of the laws. The liberty to contract and the right to dispose of property has never been held to be so inviolate as to prevent the state from regulating, and even prohibiting, certain contracts, and this is so even if the matters are not mala in se.

The third objection is, that the act offends against article III, sec. 7, of the constitution of Pennsylvania, which provides, that the general assembly shall not pass any local or special law regulating labor, trade, mining or manufacturing.   Is this a special act regulating trade ?

In considering this branch of the case, which I consider the most important, we must also take in account the provision of article XVI, sec. 3, of the constitution which provides, that the exercise of the police power of the state shall never be abridged. The state has an undoubted right in the exercise of its police powers to declare any acts done within its territory unlawful or criminal if not beyond the limits imposed by the constitution ; and considerations of wisdom or policy, hardship or difficulty of enforcement must be addressed to the law-making branch of the government : Com. v. Biddle, 139 Pa. 605.

And the state in the exercise of its police power may pro-

hibit the common-law right of contract in the individual, as to things not malum in se : Swing v. Munson, 191 Pa. 582, citing Com. v. Vrooman, 164 Pa. 306.

The police power of the state is the right to prescribe regulations for the good order, peace, health, protection, comfort, convenience and morals of the community which do not encroach on a like power vested in congress by the federal constitution or do not violate the provisions of the organic law : Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355, citing Powell v. Penna., 127 U. S. 678; Powell v. Com., 114 Pa. 205.

The question remains, therefore, has the state the right to make the receipt of state moneys a basis of classification and prohibit officers of institutions receiving such money from contracting with such institutions? We need not discuss the right of the legislature to classify the objects of legislation, provided such classification is reasonable, but classification must be based upon substantial grounds. The legislature cannot deny to one class of citizens the free right to contract which is enjoyed by and unalterably secured to all other citizens, unless there be such difference as in the nature of things furnishes a reasonable basis for such regulations. See Com. v. Mintz, 19 Pa. Superior Ct. 283; Com. v. Brown, 8 Pa. Superior Ct. 339, quoting State v. Loomis, 115 Mo. 307; Cooley's Const. Lim. (6th ed.), 484.

The state of Pennsylvania at each session of the legislature appropriates various sums of money to numerous institutions. The evident purpose of the act was to preserve the appropriations for the uses for which they were intended. To allow such institutions to contract with their officers, or, in other words, to allow the officers to contract with themselves, was thought by the legislature to open the way to fraud and, therefore, the act was passed. Was the state compelled to pass an act which applied to all institutions whether the subjects of the state's bounty or not ? The state has a special interest in the subjects of its charity. It would seem strange that the sovereign power, considered abstractly, could not safeguard its own interest without including the interest of all of its subjects.

The legislature in its wisdom has determined that it is against good policy for the trustee of an institution, receiving state aid, to sell supplies to such institution. Any right-minded person

will agree that the effect of such an act is salutary and is in line with the trend of public opinion.

The limitation of the act to institutions receiving state aid is, to my mind, a reasonable classification, because such institutions sustain relations to the state which others do not. I consider the act constitutional. The contract entered into between Milton Yetter and the East Stroudsburg state normal school was unlawful and there can be no recovery for the breach thereof.

Now, December 10, 1906, judgment is entered in favor of the defendant.

*Error assigned* was the judgment of the court.

*S. E. Shull,* of *Shull & Shull,* for appellant.—The act of 1903 has no application to the plaintiff : Trainer v. Wolfe, 140 Pa. 279 ; Milford Borough v. Milford Water Co., 124 Pa. 610 ; McLeod v. Central Normal School Assn., 152 Pa. 575.

The act is unconstitutional: Dartmouth College v. Woodward, 17 U. S. 518 ; Boston Beer Co. v. Massachusetts, 97 U. S. 25 ; Hays v. Com., 82 Pa. 518 ; Bank of Pennsylvania v. Com., 19 Pa. 144 ; Com. v. Pittsburg, etc., R. R. Co., 58 Pa. 26 ; Frost v. Cherry, 122 Pa. 417 ; Com. v. Clark, 14 Pa. Superior Ct. 435 ; Ayars' App., 122 Pa. 266 ; Sayre Boro. v. Phillips, 148 Pa. 482 ; Shamokin Boro. v. Flannigan, 156 Pa. 43.

*F. B. Holmes,* for appellee.—We believe there can be no doubt that state normal schools, as they exist in Pennsylvania, are " institutions " within the purview of the act of 1903 : Dodge v. Williams, 46 Wis. 70 (1 N. W. Repr. 92).

The act is constitutional: Slaughter House Case, 111 U. S. 746 (4 Sup. Ct. Repr. 652); New York & New England R. R. Co. v. Bristol, 151 U. S. 556 (14 Sup. Ct. Repr. 437) ; Eagle Ins. Co. v. Ohio, 153 U. S. 446 (14 Sup. Ct. Repr. 868) ; Myers v. Irwin, 2 S. & R. 368 ; Ex parte Kemmler, 136 U. S. 436 (10 Sup. Ct. Repr. 930) ; McElvaine v. Brush, 142 U. S. 155 (12 Sup. Ct. Repr. 156) ; Miller v. Texas, 153 U. S. 535 (14 Sup. Ct. Repr. 874) ; Com. v. Wilson, 9 W. N. C. 291 ; Barbier v. Connelly, 113 U. S. 27 (27 Sup. Ct. Repr. 357) ;

Com. v. Brown, 8 Pa. Superior Ct. 339; Sample v. Pittsburg, 212 Pa. 533.

PER CURIAM, April 15, 1907:

It is contended that the provisions of the Act of April 23, 1903, P. L. 285 were intended to apply only to public or quasi public corporations, and that the appellant is not such a corporation. But we see no occasion or justification for going outside the unambiguous words of the act in search of a construction that would exclude from its operation a class of institutions that are as plainly within the reason of the enactment, and the mischief to be remedied, as any others that can be mentioned. The contract in question was made in March, 1906, for which fiscal year, as well as the year following, an appropriation of state money had been made, to be distributed equally among the thirteen normal schools, the appellant being one of them. See Act of May 11, 1905, P. L. 557. It was conceded in the argument, and is a matter of common knowledge, that it is customary for the state legislature to appropriate funds from the state treasury in aid of such schools, and it appears from the appropriation act of 1905, as well as by the admission of the case stated, fairly interpreted, that the appellant was enjoying the benefit of an appropriation for the particular year. There is no room for doubt that at the time the contract was made the appellant was an institution receiving state money from legislative appropriations, within the true intent and meaning of the act of 1903. The remaining questions raised in the argument relate to the constitutionality of the act. These are adequately discussed in the clear and satisfactory opinion of the learned judge specially presiding below, in which we concur.

Judgment affirmed.